FILED
COURT OF APPEALS
DIVISION II

2015 JAN 21 AM 9: 04

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44646-4-II |
| Respondent, | |
| v. | |
| SANDY LYNN FEHR, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Sandy Fehr appeals her conviction and sentence for possession with intent to deliver methamphetamine.[1] Fehr argues that insufficient evidence supported her intent to deliver the methamphetamine in her possession and that the trial court erred at sentencing by including 14 alleged prior felony convictions in her offender score. We hold that sufficient evidence supports Fehr's conviction, but that because the State failed to prove Fehr's alleged prior convictions by a preponderance of the evidence, the trial court erred by including them in her offender score. Therefore, we affirm Fehr's conviction, but vacate her sentence and remand for resentencing.

---

[1] RCW 69.50.206(d)(2); former RCW 69.50.401 (2005).

FACTS

Detectives Seth Libbey and Raymond Hartley took Sandy Fehr into custody under an arrest warrant. Detective Hartley searched Fehr and found methamphetamine in two separate places on Fehr's person. In Fehr's sweatshirt pocket, Detective Hartley found a purse with a pipe, pills, and approximately one gram of methamphetamine. In Fehr's pants pocket, Detective Hartley found a plastic "baggie" containing 5.1 grams of methamphetamine.

Detective Hartley testified that 5 grams of methamphetamine could be sold for approximately $500, and that it was not typical for a user to carry 5 grams of methamphetamine on her person. Detective Libbey testified that the methamphetamine dealers he interacts with and arrests often "pinch" off a piece of the methamphetamine for their personal use, and sell the rest to pay back their dealer. Detective Libbey testified that methamphetamine users often smoke methamphetamine through a pipe.

The State charged Fehr with one count of possession with intent to deliver methamphetamine, and a jury found her guilty as charged. After the jury's verdict, based in part on the State's allegation that Fehr had three prior bail jumping[2] convictions, the trial court ordered Fehr's immediate remand into custody. After the trial court's ruling, Fehr stated the following on her own behalf:

> [Fehr]: When I got those bail jumps a long time ago. That was because there was an issue going on where I had gotten charged but they'd gotten dismissed with on a . . . case because I'd walked in on something and watched these guys—seeing these guys beating this man up. And the only reason I didn't come to court and bail jumped on those issues was because my children and—lived in La Center and the people who had done that . . . had literally went down there and shot bullets into

---

[2] RCW 9A.76.170.

2

my ex—ex-husband's house and threatened my children. So I went on the run and hid until all of that was over and then afterwards turned myself in.

[Trial Court]: Okay.

[Fehr]: So only—only, that was the only reason I ever bail jumped because of fear for my children's lives.

Verbatim Report of Proceedings (VRP) at 180.

At sentencing, the State provided the trial court with a summary of Fehr's 14 alleged prior felony convictions,[3] including 10 convictions for violating the Uniform Controlled Substances Act,[4] 3 convictions for bail jumping, and 1 conviction for rendering criminal assistance.[5] Other than the summary, the State did not provide any evidence supporting the convictions' existence.

At sentencing, Fehr's trial counsel did not object to inclusion of these alleged prior convictions in Fehr's offender score, stating the following:

Prior to [Fehr's] conviction in the most recent case, she does have a lot of points. However, almost all of those—most of those points are derived from possession of drug cases. There is one possession with intent to deliver on a conviction within that group, but clearly the—the vast majority of those are possession and—and of course there are—there are a couple bail jumps in there. I believe those are Class C felonies. So, although the—the tally is high, before last week's verdict case, if you will, there was only one possession with intent case in that group.

VRP at 187. The trial court included the 14 alleged prior convictions in Fehr's offender score, resulting in an offender score of 14. Based on that offender score, the trial court imposed 60

---

[3] Fehr appeals 3 of these alleged prior convictions in the linked case, *State v. Fehr*, filed, No. 44643-0-II, (Wash. Ct. App. Mar. 13, 2013).

[4] Chapter 69.50 RCW.

[5] Former RCW 9A.76.070 (1982).

months imprisonment, to run consecutively with the charges in the linked case, No. 44643-0-II. Fehr appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE: INTENT TO DELIVER METHAMPHETAMINE

Fehr argues that insufficient evidence supported her intent to deliver the methamphetamine in her possession. We disagree.

When a defendant challenges the sufficiency of the evidence supporting her conviction, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the charged crime's elements beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *State v. Moles*, 130 Wn. App. 461, 465, 123 P.3d 132 (2005) (quoting *Salinas*, 119 Wn.2d at 201). Circumstantial evidence is not any less reliable or probative than direct evidence in reviewing the sufficiency of the evidence supporting a jury verdict. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Under RCW 69.50.206(d)(2), methamphetamine is a "controlled substance." RCW 69.50.401(1) states in part:

> [I]t is unlawful for any person to . . . possess with intent to manufacture or deliver, a controlled substance.

Convictions for possession with intent to deliver a controlled substance are highly fact specific and require substantial corroborating evidence. *See State v. Brown*, 68 Wn. App. 480, 483-85, 843 P.2d 1098 (1993). The mere fact of possession of a large quantity of drugs, and a detective's opinion testimony that the quantity was more than a drug user would typically carry for personal

use, do not provide adequate corroborating evidence to establish intent to deliver. *State v. Campos*, 100 Wn. App. 218, 222, 998 P.2d 893 (2000).

Here, the evidence showed more than the mere fact of possession of a large quantity of drugs and a detective's opinion testimony that the quantity was more than a methamphetamine user would typically carry. Upon searching Fehr, Detective Hartley found a pipe, pills, and approximately one gram of methamphetamine in Fehr's sweatshirt pocket. Detective Hartley also found another 5.1 grams of methamphetamine in Fehr's pants pocket. Detective Hartley testified that 5 grams of methamphetamine is worth approximately $500, and is a far larger quantity than a methamphetamine user would typically carry. Detective Libbey testified that the methamphetamine dealers he interacts with and arrests often "pinch" off a piece of the methamphetamine for their personal use and sell the rest to pay back their dealer. Detective Libbey also testified that methamphetamine users often smoke methamphetamine through a pipe.

Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Fehr possessed a large amount of methamphetamine, placed a small amount of it in her sweatshirt pocket with her pipe for personal use, and placed the remaining 5.1 grams in her pants pocket with intent to sell it. Thus, substantial evidence supports that Fehr had intent to deliver the methamphetamine in her possession.

## II. OFFENDER SCORE CALCULATION

Fehr argues that the State must prove convictions to a jury beyond a reasonable doubt before the trial court may include them in a defendant's offender score and alternatively argues that the State failed to prove Fehr's prior convictions by a preponderance of the evidence. We

hold that the State must prove convictions only to a judge by a preponderance of the evidence, but that here, the State failed to do so.

Sentencing errors resulting in unlawful sentences may be raised for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). We review offender score calculations de novo. *State v. Moeurn*, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010). The sentencing court acts without statutory authority when imposing a sentence based on a miscalculated offender score. *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997).

A.     *Burden of Proving the Existence of Prior Convictions*

Fehr argues that to include prior convictions in a defendant's offender score, the State must prove their existence to a jury beyond a reasonable doubt, rather than to a judge by a preponderance of the evidence, citing the United States Supreme Court's recent decision in *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) and the 3 part balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We disagree.

The use of prior convictions as a basis for sentencing is constitutionally permissible provided either the State proves their existence to a judge by a preponderance of the evidence, or a defendant affirmatively acknowledges their existence. *State v. Witherspoon*, 180 Wn.2d 875, 892, 329 P.3d 888 (2014); *State v. Mendoza*, 165 Wn.2d 913, 927-28, 205 P.3d 113 (2009). Following the briefing in this case, our Supreme Court considered *Alleyne's* effect on this rule, and held that the State must prove the prior convictions' existence to a judge by a preponderance of the evidence. *Witherspoon*, 180 Wn.2d at 891-92. And use of the balancing test in *Mathews*,

6

No. 44646-4-II

a case involving termination of social security benefits, is inappropriate for analyzing the calculation of offender scores because this issue can arise in only a criminal context. *See State v. Hurst*, 173 Wn.2d 597, 601-03, 269 P.3d 1023 (2012); *State v. Brousseau*, 172 Wn.2d 331, 346 n.8, 259 P.3d 209 (2011); *State v. Heddrick*, 166 Wn.2d 898, 904-05 n.3, 215 P.3d 201 (2009). Thus, the State must prove prior convictions only to a judge by a preponderance of the evidence, not to a jury beyond a reasonable doubt.

B.     *Application to Fehr's Case*

Fehr argues that the trial court erred by including 14 alleged prior felony convictions in her offender score because the State failed to prove these alleged prior convictions' existence. The State argues that the trial court properly included the alleged prior convictions because Fehr affirmatively acknowledged their existence. We agree with Fehr.

While a certified copy of the judgment provides the best evidence to prove a prior conviction's existence, a sentencing court may rely on other comparable documents or transcripts as long as they provide minimum indicia of reliability. *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 568-69, 243 P.3d 540 (2010). But an unsupported criminal history summary, standing alone, is insufficient to establish the existence of a defendant's prior convictions by a preponderance of the evidence. *State v. Hunley*, 175 Wn.2d 901, 917, 287 P.3d 584 (2012).

To make an affirmative acknowledgment of a conviction's existence, the defendant must make an affirmative acknowledgement of "*facts and information* introduced for the purposes of sentencing." *Mendoza*, 165 Wn.2d at 928. Neither the defendant's failure to object to the State's statement of criminal history, nor the defendant's agreement with the ultimate sentencing

7

recommendation, constitutes an affirmative acknowledgement of the State's asserted criminal history. *Hunley*, 175 Wn.2d at 917; *Mendoza*, 165 Wn.2d at 928.

Here, the State provided only its unsupported summary of Fehr's alleged prior convictions. This, standing alone, is insufficient to establish the existence of Fehr's alleged prior convictions by a preponderance of the evidence. *Hunley*, 175 Wn.2d at 917.

At a hearing on post-conviction bail, Fehr made general statements about her reasons for jumping bail. And Fehr's counsel acknowledged that Fehr had "a lot of points." VRP at 187. These statements do not qualify as affirmative acknowledgments of Fehr's alleged prior convictions because these statements were too general to clearly state which, how many, or what type of convictions Fehr acknowledged. Thus, the State failed to meet its burden of proving the existence of Fehr's 14 convictions by a preponderance of the evidence.

We affirm Fehr's conviction, but vacate Fehr's sentence and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040 it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.