**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55763-1-II |
| Appellant, | |
| v. | |
| ALEX CHARLES VEVEA, | PUBLISHED OPINION |
| Respondent. | |

GLASGOW, C.J.—Alex Charles Vevea physically assaulted his mother and would not let her leave the room for several hours. The State charged Vevea with kidnapping, assault, and violation of a no contact order. The trial court found Vevea incompetent to stand trial and imposed two 90-day periods of competency restoration.

When the State sought an additional 180-day restoration period, Vevea requested a jury trial. During pretrial discovery, Vevea sought any treatment records from his previous restoration commitments that the State's expert relied on, but the State did not provide the requested records. Vevea moved in limine to exclude testimony regarding treatment records that were not provided to Vevea's counsel. The trial court denied the motion, holding that the rules of civil procedure applied to competency restoration proceedings and that defense counsel should have subpoenaed the records. After trial, based on the jury's verdicts, the trial court committed Vevea for a final 180-day restoration period. Vevea would have been released from this commitment in October 2021.

No. 55763-1-II

On appeal, Vevea argues his competency hearing was a criminal proceeding subject to criminal discovery rules, and the State was obligated to provide the requested treatment records under CrR 4.7. The State now concedes that a competency restoration proceeding is a criminal proceeding subject to CrR 4.7 but contends that this appeal is moot because Vevea's restoration period has expired.

We hold that even if we can no longer provide relief, the exception to mootness for a matter of continuing and substantial public interest applies. We accept the State's concession on appeal and hold that competency restoration proceedings are subject to criminal discovery rules, including CrR 4.7. Vevea does not seek further relief.

## FACTS

Vevea was diagnosed with schizophrenia when he was 20 years old, and he has had a history of involuntary commitments to receive mental health treatment. He was committed for competency restoration on at least two prior occasions due to incompetency to stand trial for past charges.

In 2020, Vevea lived with his mother, despite a no contact order prohibiting Vevea from contacting her. In August 2020, Vevea's mother was admitted to the hospital after Vevea assaulted her, causing serious injuries, and kept her from escaping for several hours. Vevea was charged with one count of first degree kidnapping, two counts of second degree assault, and one count of violation of a no contact order.

A.    Pretrial Competency Determination

Vevea's attorney raised concerns about Vevea's competency to stand trial due to his mental health condition, and the trial court ordered an evaluation. Among other things, the evaluator

No. 55763-1-II

considered Vevea's mental health history, including his prior commitments and prior records from the Office of Forensic Mental Health Services. The evaluator's findings led the trial court to conclude that Vevea lacked the capacity to "[a]ssist in [his] own defense as a result of mental disease or defect." Clerk's Papers (CP) at 29. The trial court ordered the first 90-day restoration period on September 9, 2020.

During the restoration period, Vevea "refuse[d] to take any psychiatric medications." CP at 35. The State petitioned for administration of involuntary medication because, according to Vevea's treating psychiatrist, medication had been shown to improve Vevea's condition and help restore competency in the past. The trial court granted the petition.

Following the conclusion of the first 90-day restoration period, the trial court found Vevea was still incompetent to stand trial. However, psychiatric evaluations that considered in part Vevea's commitment history, showed there was a "substantial likelihood that additional restoration will be successful." CP at 82 (emphasis omitted). The trial court ordered a second 90-day restoration period on December 21, 2020.

B.     Competency Restoration Trial

Near the end of his second 90-day restoration period, Vevea requested a jury trial under former RCW 10.77.086(3) and (4) (2019) to "determine whether [he] remained incompetent" and whether additional restoration was warranted. CP at 85. To justify an additional 180-day restoration period, the State had to prove that Vevea was either "a substantial danger to other persons" or "presents a substantial likelihood of committing criminal acts jeopardizing public safety or security" and that "there is a substantial probability that the defendant will regain competency within a reasonable period of time." Former RCW 10.77.086(4).

3

No. 55763-1-II

Prior to the jury trial, Vevea asked the trial court to order the State to provide any and all treatment records from his treatment facility that were created after the order for involuntary medication and that the State's evaluator relied on. The State did not produce the requested records.

Vevea then filed a motion in limine asking the trial court to limit testimony in the State's case to information that had been disclosed to the defense. The trial court reasoned that a competency restoration trial was a civil trial and that Vevea's counsel could have subpoenaed the records under CR 26. The trial court concluded that the State was not obligated to produce the records absent a subpoena, although the State would have been obligated to do so in a criminal proceeding. Furthermore, the trial court reasoned that even if the criminal discovery rules did apply, the State did not intend to offer the requested records at trial, regardless of whether the State's expert had relied on them. The trial court went forward with trial without requiring the State to produce the requested records to Vevea.

Vevea then stipulated that he was "not competent to stand trial due to his inability to understand the nature of the proceedings against him and to assist counsel in his defense as a result of mental disease or defect." CP at 140. On April 27, 2021, a jury found that Vevea was "a substantial danger to other persons" or "present[ed] a substantial likelihood of committing criminal acts jeopardizing public safety or security." CP at 141. The jury also found that there was "a substantial probability that [Vevea would] regain competency within a reasonable period of time." CP at 142. The trial court ordered a third competency restoration period of up to 180 days.

Vevea's 180-day commitment expired, and the hearing date to determine his competency was set for October 26, 2021. Our record does not indicate whether Vevea was found competent to stand trial. Vevea appeals.

No. 55763-1-II

ANALYSIS

I. MOOTNESS

The State contends that we cannot provide Vevea any effective relief because his 180-day commitment has already expired and, therefore, this appeal is moot. Vevea argues that even if we cannot provide effective relief, this appeal raises a matter of public importance that is subject to repetition and requires review to provide future guidance. We agree with Vevea and hold that the public interest exception to mootness applies.

A.       Competency Restoration Proceedings

Whenever there is reason to doubt a defendant's competency, a trial court may order a competency evaluation. *See* RCW 10.77.060(1)(a).[1] If the defendant is found to be incompetent, the trial court may order them "to undergo competency restoration treatment." RCW 10.77.084(1)(b).

The trial court may order a felony defendant who is found incompetent to be committed for a period of up to 90 days. RCW 10.77.086(1). The defendant is entitled to a court hearing at the end of the restoration period to reevaluate competency. RCW 10.77.084(1)(b). On expiration of this first restoration period, if the trial "court finds by a preponderance of the evidence that a defendant . . . is incompetent," it may extend the order of commitment for an additional 90 days. Former RCW 10.77.086(3). If on expiration of the second restoration period the defendant is still deemed to be incompetent, and the trial court or jury finds the defendant is a "substantial danger to other persons . . . or . . . presents a substantial likelihood of committing criminal acts jeopardizing

---

[1] Sections of chapter 10.77 RCW were amended in 2022. Throughout, if the amendment did not affect the language of the section cited in this opinion, we cite to the current version of the statute.

5

No. 55763-1-II

public safety or security" and "there is a substantial probability that the defendant will regain competency within a reasonable period of time," the court may order an additional commitment period of up to 180 days. Former RCW 10.77.086(4).

If after the 180-day commitment period, or at any time during the above proceedings, the trial court finds that "a defendant is not likely to regain competency, the court shall dismiss the proceedings without prejudice and refer the defendant for civil commitment evaluation . . . if appropriate." RCW 10.77.084(1)(d). For a felony defendant whose charges have been dismissed, civil commitment may be ordered upon findings that the defendant has "committed acts constituting a felony, and as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts." RCW 71.05.280(3).[2]

B.      Mootness Exception

Even if the expiration of the commitment period means that this court cannot provide effective relief, we may still decide a case if it involves "matters of continuing and substantial public interest." *Eyman v. Ferguson*, 7 Wn. App. 2d 312, 320, 433 P.3d 863 (2019). We typically consider three factors: "'(1) whether the issue is of a public or private nature[,] (2) whether an authoritative determination is desirable to provide future guidance to public officers[,] and (3) whether the issue is likely to recur.'" *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004) (internal quotation marks omitted) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994)). "Cases involving interpretation of the constitution or interpretation of statutes are public in nature" and tend to provide future guidance to officials. *State v. Beaver*, 184

---

[2] This statute was amended in 2022. Because the language of this section was not affected, we cite to the current version of the statute.

No. 55763-1-II

Wn.2d 321, 331, 358 P.3d 385 (2015). We may also consider "the level of adversity between the parties." *Id.*

The Washington Supreme Court has held involuntary *civil* commitment issues to be "matters of continuing and substantial public interest" because they involve "a significant deprivation of liberty that requires due process protection." *In re Det. of McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984). In *Born v. Thompson*, 154 Wn.2d 749, 758, 117 P.3d 1098 (2005), we opined, and the Supreme Court expressly agreed, that chapter 10.77 RCW procedural questions involving burden of proof bear substantial similarity to those arising from chapter 71.05 RCW and are equally important in providing safeguards against improper governmental action against an incompetent defendant.

Relying on *Born*, we come to the same conclusion that procedural questions in competency restoration proceedings present issues of continuing and substantial public interest. Competency restoration proceedings occur often and involve protecting substantial rights of the accused as well as public safety.

The procedures mandated by RCW 10.77.060, including the manner of conducting evaluations, the procedural consequences of the order to conduct evaluations, and the defendant's right to have access to their own records, all demonstrate the legislature's intent to protect incompetent individuals from conviction before they can receive the proper treatment.

Resolving this issue can also offer future guidance. The parties have pointed to no other Washington case that has definitively held that criminal discovery rules apply in competency restoration proceedings. We have not located any, and the issue is not confined to a single set of

7

No. 55763-1-II

facts in this particular case. The trial court found no authority and concluded the civil discovery rules applied. This demonstrates that guidance is reasonably likely to be helpful.

Finally, this issue is likely to recur in future cases. It was the State that argued below that the civil discovery rules applied, and the trial court explained that it could not find authority on the question of whether civil or criminal discovery rules applied. We conclude that without clear authority, this issue is likely to recur.

We therefore hold that the mootness exception applies. This appeal involves a matter of continuing and substantial public interest and, without guidance, the issue is likely to recur at some point in the future.

## II. APPLICATION OF CRIMINAL DISCOVERY RULES TO A COMPETENCY RESTORATION HEARING

Vevea argues that a competency restoration hearing implicates the fundamental due process right to avoid being tried while legally incompetent. Because competency evaluations are part of the criminal process, the rules of criminal procedure should apply. He further contends that by incorporating this procedure under Title 10 RCW, which governs criminal procedure, the legislature revealed its intent for a competency restoration hearing to be criminal in nature.

The State now concedes that the criminal rules of discovery apply. The State also concludes that courts have recognized this proceeding is criminal in nature because of the "fundamental liberty interests of pretrial detainees awaiting competency restoration." Br. of Resp't at 6. We accept the State's concession and conclude that the criminal rules of discovery, including CrR 4.7, apply to competency restoration proceedings in a criminal case.[3]

---

[3] We note that CrR 4.6 and 4.8 also contain provisions related to discovery.

No. 55763-1-II

RCW 10.77.050 provides that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." A person is deemed incompetent if they lack the "capacity to understand the nature of the proceedings against [them] or to assist in [their] own defense as a result of mental disease or defect." RCW 10.77.010(17). In proceedings under chapter 10.77 RCW, defendants retain their right to counsel and their right against self-incrimination, and they may retain an expert and present expert testimony. RCW 10.77.020.

In *State v. Hurst*, the Supreme Court assumed competency proceedings, including successive hearings about whether further commitment is necessary for restoration, were criminal proceedings. 173 Wn.2d 597, 601, 603-05, 269 P.3d 1023 (2012). The *Hurst* court conducted a due process analysis assuming the proceeding was part of the "state law governing criminal procedures." *Id*. at 603. Additionally, the Ninth Circuit Court of Appeals has recognized that fundamental liberty interests are implicated when defendants are held in pretrial detention awaiting competency determinations, which "'lies at the heart of the liberty that [the Due Process] Clause protects.'" *Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, 822 F.3d, 1037, 1042 (2016) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001)). Issues relating to pretrial competency proceedings are integral to due process interests that arise in the criminal context. *Id.* at 1043. Finally, as Vevea argues, chapter 10.77 RCW overall is criminal in nature.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55763-1-II

We accept the State's concession and conclude that criminal discovery rules, including CrR 4.7, apply in competency restoration proceedings like the one at issue below.[4] Vevea does not seek further relief.

## CONCLUSION

We hold that Vevea's release from commitment for competency restoration does not preclude review because the issue of whether civil or criminal discovery rules apply to competency restoration proceedings is one of substantial public interest. We accept the State's concession that competency restoration proceedings are subject to criminal discovery rules, including CrR 4.7.

*Glasgow, CJ*

Glasgow, C.J.

We concur:

*Cruser, J.*

Cruser, J.

*Price, J.*

Price, J.

---

[4] The State makes a brief argument that the error was harmless. However, Vevea does not ask us to reverse his prior 180-day restoration order. He asks only that we invoke the exception to mootness for issues of substantial public importance and hold that criminal discovery rules applied in his competency restoration proceedings. As a result, we need not reach the issue of whether the discovery error was harmless.

10